## WARREN et al. v. BOARD OF MEDIATION et al.

### No. 509.

District Court, W. D. Louisiana, Shreveport Division.

Dec. 23, 1932.

Barnette & Roberts, of Shreveport, La., for complainants.

Philip H. Mecom and J. Fair Hardin, both of Shreveport, La., for respondents.

DAWKINS, District Judge.

The petitioners, four in number, allege that they are telegraph operators in the employ of the Louisiana & Arkansas Railway Company. They bring this suit against the National Board of Mediation, "through its duly authorized mediator, William F. Mitchell, acting in his official capacity as a mediator to said Board of Mediation, and said William F. Mitchell, individually," alleging that prior to May, 1929, a number of employees of the same class, "whom your petitioners represent," were employed by the Louisiana Railway & Navigation Company, at which time said line was merged with the Louisiana & Arkansas Railway Company, the latter having existed as an operating line anterior to said date, "and in whose employ a number of your petitioners then were"; further, that the employees of the two companies were operating under distinctly different contracts, rules, regulations, and rates of pay; that on September 20, 1929, petitioners, "known as the Order of Railway Telegraphers, an unincorporated association of all the telegraphers" of the two roads, requested a raise of 12½ cents per hour in the wages of those formerly employed by the Louisiana Railway & Navigation Company, and an increase of 8 cents per hour in the wages of the Louisiana & Arkansas Railway Company employees, which was done "for the purpose of classifying the standing or rate of pay for the same class of employees employed by the

same railway company and to make the rate of pay standard or in keeping with the scale of pay adhered to by other railway companies for the same class of service in this section of the country"; that they also applied to the consolidated company for a standardization of the rules, regulations, and contracts of employment, but that, after conference between petitioners and the representative of the railway company, it was agreed on July 23, 1930, that, due to economic conditions, the matters involved in said request should be held in abeyance, and that petitioners might bring the same up at any time thereafter; that the matter remained in that situation until February 8, 1931, when the railway company demanded that petitioners "consent to a reduction in pay to the extent of four days per month, and that rather than have some of the employees discharged, thirty-four of your petitioners, who being affected by the cut, assented thereto"; that on December 29, 1931, defendant served notice on petitioners that, effective January 1, 1932, all of them who had not been affected by the reduction "would be cut 10% in their salary rate of pay," and that your petitioners, "through intimidation and threat of abrogation of all rules, regulations and contracts, were forced to accept the reduction"; in the meantime, the request for reformation of scales of pay, working rules, and conditions remained in abeyance under the agreement of July 23, 1930; that on August 8, 1932, defendant served notice that, in accordance with section 6 of the Railway Labor Act (section 156, title 45, U. S. C. [45 USCA § 156]), unless adjusted within the time provided by said act, a 10 per cent. reduction in wages would go into effect, together with the abrogation of all rules, etc., and petitioners were obliged to invoke the services of the Board of Mediation, which Board is now considering said application for reduction, through William F. Mitchell, as mediator, under docket Nos. C–753 and C–754; that petitioners protested against the action of the railway company, contending that their application "for increase of pay and standardization of contracts, rules and regulations, had not been disposed of" and that this should be done prior to any subsequent demand on the part of the railway company for reduction in wages and abrogation of rules and contracts, but that said company declined to consider these matters further; that petitioners were thus compelled to invoke the services of said Board of Mediation upon these questions, which they did on October 22, 1932; that said Mitchell as mediator first notified petition-

ers that the application of the Louisiana & Arkansas Railway Company for a decrease in the wage scale and abrogation of rules, regulations, and contracts could not be completed with success, and "unless your petitioners assent to the demands of the L. & A. Railway Company immediately that said cause will be placed in arbitration, as provided by law, or at least arbitration requested"; that the railway company "has the right to refuse to submit to arbitration," and that by said action their demands will immediately go into effect, notwithstanding the petitioners' willingness to arbitrate the same, "Petitioners are informed and believe that the Railway Company will refuse to submit to arbitration." Therefore, if the Board submits the matters to arbitration petitioners will suffer irreparable injury in the loss of their contracts of employment and all rights thereunder. Petitioners further allege that their application to the Board of Mediation for consideration of the demands for the standardization of the wage scale and revision and standardization of contracts, rules, and regulations now pending before said Board should be considered jointly along with the demand of the railway company for the reduction in pay and the abrogation of contracts and rules, as the controversies are between the same parties and are of a contrary and inconsistent nature, so that, if the Board should fail to settle these matters, they could both be referred to arbitration at the same time.

Petitioners pray for a preliminary injunction against the Board of Mediation, William F. Mitchell as mediator and individually, restraining them from submitting the matters covered by docket cases C–753 and C–754, to arbitration and upon final trial that the writ be made permanent, enjoining said action "until the application of petitioners for increase and standardization of the wage scale and revision and standardization of their contracts, rules and regulations, has been taken into negotiation and consideration by said Board of Mediation, submitted with the application of the Louisiana & Arkansas Railway Company to arbitrate jointly."

The defendant, William F. Mitchell, files a motion to dismiss the bill for want of jurisdiction, in that the Board of Mediation, being a necessary party, was not and could not be brought into court for the reason that its domicile is in the city of Washington, District of Columbia; further, that the railway company is a necessary party, and that the bill does not allege the domicile or residence

of Mitchell, and therefore does not show any jurisdiction over him; that he is in fact not a resident of this district but of the said city of Washington, District of Columbia; and that he is not a member of the Board of Mediation, but merely a mediator thereof; finally, that the requisite jurisdictional amount of $3,000 is not alleged.

It is thus seen that the plaintiff is trying to bring the Board of Mediation into this court through one William F. Mitchell, referred to as a "Mediator" of the said Board, to control its action as to the manner and order in which it shall consider matters as to which its services have been invoked. Of course, if the Board is not properly before the court, it is not possible to determine any issue as to it, such as, in the first place, whether it is suable at all or not apart from the government of the United States; and, secondly, whether it can be controlled by the courts in the matter of procedure or the order in which it will hear cases before it.

The Railway Labor Act (Act of May 20, 1926, 44 Stat. 577), in section 4 (section 154 of title 45, U. S. C. [45 USCA § 154]) in its first paragraph, creates the Board of Mediation "as an independent agency in the executive branch of the Government," composed of five members, appointed by the President and confirmed by the Senate, and provides that "a majority of the members in office shall constitute a quorum for the transaction of the business of the board." In the second paragraph of this section the Board is required to annually designate one of its members as chairman, and to maintain "its principal office in the District of Columbia, but it may meet at any other place whenever it deems it necessary." It is permitted to designate "one or more of *its members* to exercise the functions of the board in mediation proceedings." The third paragraph of this section authorizes it to appoint "such experts and assistants to act in a *confidential capacity* and, subject to the provisions of the civil service laws, such other officers and employees," as it may choose and to fix their compensation. (Italics by the writer.)

The fifth section of the act (section 155, title 45 U. S. C. [45 USCA § 155]) in its first paragraph provides that either railroad employees or the carriers may invoke, or the Board may tender, its services in matters as follows:

"(a) A dispute arising out of grievances or out of the interpretation or application of agreements concerning rates of pay, rules, or working conditions not adjusted by the parties in conference and not decided by the appropriate adjustment board;

"(b) A dispute which is not settled in conference between the parties in respect to changes in rates of pay, rules, or working conditions;

"(c) Any other dispute not decided in conference between the parties."

This paragraph further provides as follows:

"In either event the said board shall promptly put itself in communication with the parties to such controversy, and shall use its best efforts, by mediation, to bring them to agreement. If such efforts to bring about an amicable adjustment through mediation shall be unsuccessful, the said board shall at once endeavor as its final required action (except as provided in paragraph third of this section and in section 160 of this title), to induce the parties to submit their controversy to arbitration in accordance with the provisions of this chapter."

It would seem from the first paragraph of section 4 of the act (45 USCA § 154), that a majority of the members in office "shall constitute a quorum for the transaction of the business of the board," but in the second paragraph it is authorized to designate "one or more of its members to exercise the functions of the board in *mediation proceedings.*" This latter provision was no doubt made because Congress considered it might transpire that their services would be required in more than one controversy at the same time, and one or more of its members would be able to bring the contending parties together as well as the whole Board. In no event, as I appreciate the statute, are they given power to decide such a controversy with any binding effect, but merely act, as the term implies, as mediators, or "peacemakers" to try to bring the railroad and its employees to an agreement satisfactory to both sides. This is the first and main purpose of the Board, but, if they fail, then the controversy is to be referred to arbitration, provided both sides agree to it. Now these powers are vested in the Board and its members. It is true that the third paragraph of this section authorizes them to appoint experts and assistants to "act in a confidential capacity" and such "other officers and employees" as they may choose, but the provisions of the first and second sections above quoted appear to rest powers of mediation and other functions of the Board solely in its members. Of course in appointing the class-

es of officers and employees named in section 3 (45 USCA. § 153), they may call them what they please and impose upon them any duty short of actual mediation and settlement of disputes, as they see fit; but I think it clear Congress did not intend that these subordinates should discharge those functions which were peculiar to the Board itself or its members. It was no doubt considered that the very fact that they were to be appointed by the President and confirmed by the Senate would insure the selection of men of a type that would command the respect and confidence of both sides in the duty of trying to bring the parties together, and it is hardly to be assumed that they intended this should be done by employees who were to be appointed by the Board to aid it in the way of expert advice and assistance or to perform the clerical and ministerial duties of the Board, no matter by what name called. It is conceded by both sides that Mitchell is not a member of the Board, and for that reason I think he has no standing or capacity either to represent it in this suit or to perform any of the functions as to which he is sought to be enjoined, or to entertain matters which petitioners ask that he be compelled to consider. No member of the Board has been served, and, so far as this record shows, none of them have been outside the District of Columbia in connection with this controversy. They certainly cannot be brought in here through Mitchell, a mere employee.

For these reasons, I think the bill will have to be dismissed. Proper decree should be presented.